Good morning. Good morning. Assistant Federal Defender Tanya Morrow representing Andrew Boyer. I would like the court to know I intend to reserve about four minutes of my time today. And I do have some apologies to the audience. The facts of this case are difficult to talk about, but the case is very simple. The evidence presented produced the exact opposite inference that the State was required to prove regarding the attempted murder counts. The verdict is irrational. And to put it in the words similarly used by the Hink House Court, in this case, a rational fact finder could not conclude beyond a reasonable doubt that the defendant acted deliberately to cause the victim a serious bodily injury or death. At best, the evidence demonstrated that he acted impulsively, merely to satisfy sexual desires. You think impulsively? It may be that he – you're attacking intent, but to say he acted impulsively – I was using the – That's a real high hurdle under – Well, I was using the words used by the Hink House Court in describing what sexual intent is. And in that case, they concluded, of course, that the evidence did prove beyond a reasonable doubt that he did not act impulsively. But in this case, we don't have that. All we've got – the State was only able to prove that there was a sexual intent, not a homicidal intent. As an analogy, the situation is analogous to like a couple intending to avoid pregnancy by using the rhythm method. Even if there's a risk of pregnancy, there's no evidence that they intended to become pregnant. Counsel, isn't the issue here whether under all the circumstances in the evidence presented, a rational jury could infer the requisite intent? And you're arguing that a rational jury could not infer it beyond a reasonable doubt. The Jackson Standard is could a rational jury find all the required elements beyond a reasonable doubt, as I understand. That's correct, Your Honor. If it's true, then your issue is could a rational jury find the required intent element beyond a reasonable doubt? That's correct. And in this case, the trial court, for whatever reasons, and we've posited that it was because he applied the wrong standard, wrong mens rea standard, but the trial court and the district court in this case was unable to point to evidence that a rational inference beyond a reasonable doubt could be made that Mr. Boyer had the intent to commit murder in this case. You can string out inferences to the point where you have no evidence. And in this case, there is a gap in the chain of logic to get to the proof necessary to prove intent. Could you address what the district court identified, the nine or, excuse me, eight elements of evidence that the district court found sufficient under the Jackson Standard?  The fact that he had a high viral count, that he targeted vulnerable victims, and he never revealed his condition. He threatened to kill one of the victims if he told anybody about the sodomy. None of those elements satisfy the intent to actually transmit the disease in the facts of this case, which were that there was brief sodomy, anal sodomy, and ejaculation via masturbation after the brief penetration. Unlike some of those factors that the Hink House court identified, in that case, the major distinguishing factor is that Mr. Hink House intended to ejaculate into his victims. And he purposely refused to use condoms. He purposely lied about using condoms. We don't have that situation here. The only rational inference from the evidence, which was that Mr. Boyer purposely withdrew after the brief anal penetration, is that he intended not to transmit the disease. Well, at one point, I take your point. But at one point in a police interview, as I understand it, he was denied ever sodomizing anyone. And he said, I have AIDS. That's why I'm particularly careful with not sodomizing anybody. So the mere fact of, A, he lied to the police about that, but it doesn't that couldn't the jury infer from that that he absolutely knew what he was doing and that he went ahead with it intentionally and knew that it was a high risk. I don't think there's any question that there was knowledge that unprotected sexual sodomy and sex in the sense of consummation during sodomy, he knew had a potential risk. What his interrogation statement does, we believe, is just corroborate the fact that he did not have the intent to do it. Because he specifically withdrew before the consummation of the sexual act. Counsel, on that issue, I could be mistaken here. But I thought that there was an expert who said that unprotected sex like that, even if the person didn't ejaculate, could transmit the virus, that there's some bodily fluid is transmitted in the anal area and can transmit the virus whether or not he withdraws. And I further thought that the expert at least said or implied that he would have known that. The doctor did testify that the risk is not eliminated, quote, unquote, when there is penetration. He did not, he was not questioned, and there's no evidence in the record that he told Mr. Boyer that there was a risk with just brief sexual penetration. And neither did he say that there, neither could he quantify the risk. He indicated that there was no studies, but he just knew that the risk was not eliminated. And if I may add, I could reserve. Didn't he, if I could ask this one question, didn't he also say that he thought that Mr. Boyer knew that there would be risk from penetration? The actual quote was he believed. Did he say something close enough so a rational jury couldn't infer that? He stated that he believed Mr. Boyer should know or could know. The point is not whether, just about whether or not there was any risk and whether he knew about the risk. The State had to prove that he, that his conduct was, was, he had a conscious objective to cause their deaths, not just that there was some risk. In this case, all the State was able to prove was reckless endangerment. I'm going to reserve the last minute or so. You may. May it please the Court. I'm David Thompson, representing the appellee, Superintendent Bilek. I want to start with where I think this Court needs to start in reviewing what the State court did in denying the motion for judgment of acquittal on the attempted aggravated murder charges. I think the Petitioner, in light of ad pedeference, needs to show in this case that there is no possibility that a fair-minded jurist could conclude that, viewing the evidence in a light most favorable to the prosecution in this case, a rational juror could find that Petitioner intended to kill the victims. That is a very steep burden for the Petitioner. I think we're quite aware of that. So given that, why isn't counsel correct that what is really demonstrated here is reckless endangerment, but taking it to the level of intent to murder is a threshold that wasn't crossed, and that no rational jury could have found that? What does one look to to conclude and come up with reasonable jurists who would, other than the fact, I mean, reasonable jurists, it's almost self-defeating. If the State court itself concluded that that was enough, then I'm not sure if the Supreme Court is saying, as long as the State court passes on it and one doesn't have any function here at all. Maybe that's what you all would like, and I'm not sure about the majority of the Supreme Court. Your Honor, I understand your point, and I think I'd like to start the answer to that question with what I think Petitioner concedes here, and that is that the Hink House case from the Oregon Court of Appeals is the benchmark case, and that would survive a Jackson versus Virginia analysis. So if that's the starting point. But Counsel, Hink House does have different evidence. At least I thought there was some evidence in Hink House that the guy had said that he wanted to infect people. I agree with that, Your Honor. On the Jackson standard, that somehow makes this case a little different. So in terms of the facts of your case here, what are the facts from which we could say under the AEDPA standard that if the State appellate court said that a rational jury could find the element of intent, that that State court decision is objectively unreasonable? Because I think there's two levels of deference. There's the Jackson standard, any rational jury, and then there's the AEDPA standard that requires us to say not just we would apply Jackson differently, but that the State court application is objectively unreasonable. So what is there in the evidence that makes their decision objectively unreasonable? Well, I, of course, am going to argue that it was objectively reasonable, that the State court's decision was objectively reasonable application of Jackson. And I would point to the very factors or pieces of evidence that the District Attorney's Office used to determine whether or not the State court's decision was objectively reasonable. And those are the eight factors that Judge Fischer earlier alluded to, as well as the factor that appears at ER 131, and that is Petitioner's interview statement to the Court of Appeals.  was not objectively reasonable. It was objectively dangerous, and that that's why he would not engage in that kind of behavior. If you put together that piece of evidence, along with the eight factors that the reflected an intent to do harm, and that is an intent to infect the individuals with HIV and thus to cause their deaths. That's all I have on record. I might have misspoken because there's a double negative. I mean, your position is that the State court decision is not objectively unreasonable. That's like saying what you're saying. It is reasonable. But the evidence on which you think it's reasonable is that he said he knew safe sex. He knew unsafe sex was dangerous, or sodomy was dangerous. Right? And then what's the other piece of evidence? Well, the eight that the Court mentioned. The eight that appear in the magistrate judge's opinion and which were adopted by the district court, and I can go through those. They appear at ER 20 and 21. Which of those do you think support a decision that there is more than recklessness and instead intentional conduct? I think of particular significance is the last one, which I think reflects some real deliberateness and some hostility towards the victim, and that is where the petitioner, in talking to another victim other than the one that he had anally raped, in describing his anal intercourse with McCann to yet another 13-year-old victim, Boyer stated, I buttfucked him pretty good. It was pretty good. I think that that is something from which a rational juror could infer something more than that he was simply seeking sexual gratification by engaging in unprotected anal sex with that victim. May I ask you a question? Yes. In your earlier response to Judge Gould's question, you said he intended to cause harm, intended to harm, inflict harm, which would cause death. But I thought he was on trial for attempted, aggravated murder. I may have misspoken, Your Honor. What I meant by harm is... Well, that's the way, what you just said is the way in which the district attorney made his pitch to the jury. Right, but the jury was not instructed that way. No, I understand. I understand. There's no question here about the jury instructions, but your assessment of the evidence, as you just repeated it to Judge Gould, he intended to, he inflicted harm, which caused death, which would cause death. He was on trial, I thought, for attempted, aggravated murder. That is, he engaged in that conduct with the intent to murder, and he took a substantial step in that direction. I agree with that, Your Honor. And insofar as I may have misspoken with respect to the meaning that I attribute to harm is it's clear that the jury had to find that the petitioner intended to kill. That's clear. Yes. And it is my position that this evidence gives rise to an inference for a rational juror to find that he, in fact, had an intent to kill. Okay. That's a definite statement of what I meant to say. Is the death threat to one of the victims if they spill the story, if they tell anyone, is that relevant to show an intent to murder? I think it is, Your Honor. It is perhaps, you know, interpreted in a couple of different ways, but it certainly would show hostility toward that individual and toward that individual's family, and that this petitioner is certainly capable of that kind of violence against the victim. And for that reason, a rational juror could infer the requisite intent for attempted aggravated murder. If it shows hostility to the victim and if it shows a capacity to do murder, is that sufficient for a rational jury to infer that he intended to murder that victim? Standing alone, it perhaps is not, but I would submit that in combination with all of the other factors that were identified by the district court, along with the additional factor regarding the statement that he made in the interview with the detective, I think it is sufficient. I just have one last minor question, a practical question. How did these two counts of conviction on the attempted aggravated murder affect his sentence, and what happens if they were eliminated? Well, they did affect his sentence in this way, Your Honor, at least with respect to, I believe it's McCann. I'll double-check. But one of the sentences was to run consecutively to the sentences imposed in one of the other cases. So there's a significant difference in sentence with respect to at least one of the attempted aggravated murder convictions. Is it seven or eight years? What is the period of difference? Is it seven or eight years or something? He received a 121-month sentence on the one that I'm talking about. So that's a significant period of time. Okay. Thank you. Thank you, Your Honor. Thank you. I just want to emphasize what I did in my reply. What is important here is to look at the terms that are used. Sodomy is dangerous. He knew sodomy was dangerous. We are talking about sodomy in the context of sexual consummation in sodomy. There's a distinction. I disagree that the death threat shows any capacity to do murder in the first place, but I also strongly urge that there's a major temporal disconnect with regard to this idea that he intended to murder with the sodomy and later on saying, I'll kill you if you tell anybody. Temporal disconnect there. It is not any evidence of a capacity to do murder. The spread in the sentence, I believe, is at least 15 to 20 years. He received a 50-year sentence. He's rightfully and justifiably doing a 30-year sentence, and the difference is at least 15 to 20 years depending on how the sentences could have been stacked. I do agree. Hink House is an applicable State law interpretation, but that's because it does not present an unexpected or indefensible construction of the statute. States cannot just interpret away an element of a claim or element of an offense and hope to escape a Jackson review. Thank you. Thank you. Thank you, counsel. We appreciate the argument. Boyer v. Balik is submitted. The next case on calendar, which is United States v. Yarlok, has been submitted on the briefs. That takes us to the next case on calendar, which is Yarlok.
judges: Fisher, Gould, Paez